**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

LOWELL D. MEYERINK,              )
                  Plaintiff,     )
                                 )
        v.                       )        Cause No.: 2:13-CV-327-PRC
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of the Social Security )
Administration,                  )
                  Defendant.     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lowell D. Meyerink

on September 16, 2013, and Plaintiff's Brief in Support of Reversing the Decision of the

Commissioner of Social Security [DE 12], filed on January 27, 2014. This matter became fully

briefed on May 22, 2014. Plaintiff challenges the Social Security Administration's determination

that he is not disabled under the Social Security Act.

## I. Procedural Background

Plaintiff filed his first application for disability benefits in November 2004. That application

was denied initially and on review. Plaintiff then sought a hearing with an administrative law judge

(ALJ), but withdrew that request before a hearing could be held. The Agency dismissed his claim

in December 2006. Plaintiff tried a second time in November 2009. That request was denied

initially, and he did not seek review.

Plaintiff is now in the midst of his third attempt. He applied for disability insurance benefits

on February 9, 2011, alleging that he had been disabled since August 5, 2010, due to degenerative

disc disease and other back problems, high blood pressure, tendinitis in his left elbow, and various

neuropathies. The agency denied his claim initially and upon reconsideration. Plaintiff then asked

for a hearing before an ALJ, which took place on October 4, 2012, before ALJ David R. Bruce. Plaintiff appeared by counsel at the hearing and the ALJ heard testimony from Plaintiff and from Vocational Expert (VE) Thomas Grzesik. The ALJ issued a written decision denying benefits on October 15, 2012, making the following findings.

1. The claimant meets the insured status requirements of the Social Security Act though December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 5, 2010, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally, and nominal weight frequently; stand and/or walk about 2 hours in an 8 hour work day, and sit about 6 hours in an 8 hour workday. The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must be allowed to alternate between sitting and standing, such that after he sits for an hour, he should be allowed to stand for 15 minutes. The claimant should avoid unprotected heights, moving mechanical parts, and vibrations. The claimant is limited to simple tasks and simple work-related decisions. Interaction with supervisors, co-workers, and the general public is limited to frequent.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in 1963 and was 46 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 5, 2010, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981. On September 16, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

### III. Factual Background

### A. Medical History and Hearing Testimony

Plaintiff hurt his lower back sometime around 2004. He had spinal fusion surgery and was able to return to work as a diesel mechanic. In July 2010, he again injured his back. The injury occurred at work when he lost control of an engine block he was aligning. A subsequent MRI revealed that he had a herniated left lateral disc at C5–C6, and an EMG revealed an acute left-sided

C6 radiculopathy, ulnar radiculopathy in the right elbow, and bilateral median nerve radiculopathies.

Starting in August 2010, Plaintiff began seeing Dr. Luken, a neurosurgeon. Dr. Luken initially recommended that Plaintiff stay off work pending further evaluation and treatment. In September 2010, however, Dr. Luken recommended that Plaintiff return to work in a strictly sedentary capacity that allowed for at-will change of positions. Dr. Luken noted that Plaintiff could only work when he was not involved in physical therapy. This "suggestion was met with a litany of vociferous objections" by Plaintiff and his wife. (AR 524).

In October 2010, Dr. Luken changed tack, opining that Plaintiff was unable to perform any of the functions of his job as a result of his condition. That form also stated that no return-to-work date could be determined at that time. Dr. Luken reiterated this conclusion a month later.

Then, on March 17, 2011, Dr. Luken filled out a form titled "Listing § 1.04A – Spinal Nerve Root Compression." (AR 578). He opined that Plaintiff suffered from a herniated nucleus pulposus in the cervical spine, that there was evidence of nerve root compression, that Plaintiff had neuro-anatomic distribution of pain, and that Plaintiff had limitation of spinal motions linked to a spinal fusion surgery. Dr. Luken also stated that Plaintiff did not have muscle weakness, but immediately added that Plaintiff *did* have diffuse weakness in his upper extremities. Dr. Luken also noted that Plaintiff's impairments interfered with his ability to walk a block at a reasonable pace on rough or uneven surfaces, that Plaintiff had sensory or reflex loss, that there was involvement with Plaintiff's lower back with positive straight-leg raising both sitting and laying down. Dr. Luken concluded that Plaintiff's clinical findings matched all of the findings required by Listing 1.04A.

A month later, Plaintiff saw Dr. Rahmany, a state agency examining physician, who found that Plaintiff had full range of motion in his back and extremities as well as normal grip strength and

normal fine finger manipulation. He also noted that Plaintiff could walk normally without an assistive device and could stoop, squat, and walk heel to toe and tandemly without difficulty.

Treating physician Dr. Luebbe opined in September 2012 that Plaintiff suffered from a number of ailments as a result of lumbar fusion, cervical disc herniation, and depression. He noted that Plaintiff suffered from chronic pain and that his medications made him drowsy and interfered with his concentration.

Dr. Luebbe said that Plaintiff could not walk more than one block, could not sit for more than thirty minutes at a time, could not stand for more than ten minutes at a time, was limited to two hours of standing and two hours of sitting during an eight-hour work day, with the need to change positions at will. He also said that Plaintiff would miss work about four times per month, had to take frequent breaks, and could lift ten pounds rarely and less than ten pounds occasionally.

Plaintiff testified at the hearing that he suffered from intense back pain. He testified that he was unable to sit for long periods of time, explaining that he often needed to lie down to take weight off his back and neck.

## B. The ALJ's Analysis

The ALJ gave great weight to Dr. Luken's September 2010 recommendation insofar as it suggested that Plaintiff could work, explaining that "it is consistent with the results of medical testing, clinical examinations, and the overall objective medical evidence." (AR 32). The ALJ did not accept Dr. Luken's listing-level opinion insofar as it was inconsistent with the RFC, noting that the limitations put forward by Dr. Luken were contradicted by findings made just a month later by consultative examiner Dr. Rahmany. The ALJ did not otherwise mention Dr. Luken's treating records nor did he discuss Dr. Luken's opinion that Plaintiff required a sit/stand at-will option.

5

He did however discuss Dr. Luebbe's opinion evidence. And though he found most of it unsupported, he accepted the opinion as to lifting limitations and the need to alternate between sitting and standing. The ALJ did not mention Plaintiff's reports that he needed to lie down to get relief.

### III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from

doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff marshals three arguments for why the ALJ's decision should be remanded for further consideration. He contends (1) that the RFC lacked a supported basis in the record and relied on selective reports; (2) that the ALJ did not properly evaluate the opinion evidence from Dr. Luken in making the listing-level analysis, and (3) that the ALJ failed to properly resolve a conflict between the *Dictionary of Occupational Titles* and the VE's testimony. The Court considers each argument in turn.

## A. RFC

Plaintiff contends that the RFC determination is at many points deficient. He argues (1) that the ALJ erred in not discussing the evidence (primarily Plaintiff's testimony) that he often needed to lie down; (2) that the ALJ's conclusion that Plaintiff could sit for an hour at a time and then must be permitted to stand for fifteen minutes before again sitting was unsupported; (3) that the ALJ relied on Dr. Rahmany's findings without considering contrary evidence; (4) that the ALJ should have discussed those portions of Dr. Luken's treatment notes that were contrary to the ALJ's FRC determination; and (5) that the ALJ's conclusion that Plaintiff could occasionally stoop was unsupported. The Court considers each in turn.

### 1. Need to Lie Down

Plaintiff contends that the ALJ's failure to discuss reports that he needed to lie down because of back pain requires remand. As Plaintiff points out, an ALJ's "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot

reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7; *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013). The Commissioner doesn't respond to this argument directly, but rather attacks Plaintiff's credibility. In addition to reiterating points made by the ALJ in his unchallenged credibility analysis, she also points to gaps in Plaintiff's treatment as well as Plaintiff's failure to follow up with a surgery recommendation. There are two problems with these contentions. First, the ALJ's credibility analysis did not discredit Plaintiff's testimony on this basis, and the Commissioner's argument thus violates the *Chenery* doctrine. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Second, the ALJ did not inquire into possible reasons for why Plaintiff did not pursue treatment more aggressively and was thus barred from holding those decisions against Plaintiff. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008).

At any rate, the Commissioner's argument is unavailing. Neither a general conclusion that a claimant is not fully credible nor reliance on medical records that did not indicate a need to lie down can "satisfy [SSR 96-8p] or build the requisite 'logical bridge' between the evidence and the ALJ's conclusions." *Thomas*, 534 F. App'x at 550 (citing *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). The language of the Ruling is unequivocal: the ALJ must "include a discussion" explaining why the reported limitations are, or are not, consistent with the record. SSR 96-8p, at *7.

The ALJ failed to do this, and the error requires remand. As the *Thomas* court explained, when an ALJ fails to consider an issue, the Court is left without a finding to review, and the Court "cannot uphold the ALJ's decision based on a reason that the ALJ did not articulate." *Thomas*, 534 F. App'x at 550 (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012); *Jelinek*, 662 F.3d at 811); *see also Martinez v. Astrue*, No. 2:09CV62PRC, 2009 WL 4611415, at *12 (N.D. Ind. Nov. 30, 2009).

*2. Sit/Stand Option*

Plaintiff also argues that the ALJ's conclusion that Plaintiff could sit for an hour at a time at work but must then be allowed to stand for fifteen minutes is unsupported. He points out that the only evidence cited by the ALJ supported a more restrictive at-will option. Plaintiff also notes that, though the ALJ did not mention it, Dr. Luken's September 2010 recommendation that Plaintiff could return to sedentary work provided that Plaintiff must be able to change positions at will.

The Commissioner contends that, contrary to Plaintiff's testimony, Dr. Luebbe was not a treating physician at the time he made this conclusion. She points out that the record contains notes from Dr. Luebbe from August 2002 through January 2010. The only record from Dr. Luebbe made after the alleged August 2010 onset date is a September 2012 Physical RFC Questionnaire. The questionnaire shows that Plaintiff's former attorney requested outpatient medical records and progress notes. Someone wrote (in handwriting) that there was "only one visit 9-4-12." (AR 705).

The Commissioner argues that the record thus fails to show that Dr. Luebbe was a treating physician during the relevant period, contending that his conclusions were thus "properly rejected." There are a number of problems with this. For one, the Commissioner's argument again doesn't track with the ALJ's opinion. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).While he did note that the record did not show any treatment after May 2011, he did not discuss this fact as it related to Dr. Luebbe. Indeed, the decision, without caveat, calls Dr. Luebbe a treating physician.

Further, the ALJ didn't say, much less explain, that he was rejecting Dr. Luebbe's at-will limitations. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("[The ALJ] must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." (citing

*Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)). And the ALJ further erred by failing to support his less-restrictive conclusion with any evidence. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).

The Commissioner contends, in the alternative, that these errors were harmless. She points out that the VE indicated that a sit/stand at-will option would not have made a difference in the number of jobs available. Plaintiff disagrees, arguing that the VE's testimony in fact indicates that there *would* be a decrease since he testified that allowing the person to stand more often "wouldn't have any significant effect" on the number of positions. (AR 92). Plaintiff explains that one would have expected the VE to have said that the numbers "would not be affected at all." DE 21 at 13. This reading requires contorting the VE's testimony beyond recognition so that when he said that there was "no significant difference" he would be taken to mean that there was a difference and, as Plaintiff's reasoning necessitates, that the difference was significant.

It thus seems likely that the error was harmless. However, since this matter is being remanded on other grounds, the Court directs the ALJ to change the RFC analysis to allow for an at-will sit/stand option or to provide an explanation for why he chose a more restrictive sit/stand accommodation than those given by Drs. Luebbe and Luken.

### 3. Dr. Rahmany's Exam Findings

As mentioned, in an April 2011 exam, Dr. Rahmany found that Plaintiff had full range of motion in his back and his extremities. He noted that Plaintiff's grip strength and fine finger manipulation were normal and that he could walk without an assistive device. He found that Plaintiff could stoop, squat, and walk heel to toe and tandemly without difficulty. The ALJ's decision relied heavily on these findings. Plaintiff argues that this was an error, contending that the ALJ failed to

discuss a number of contradictory records that noted limited cervical motion in conjunction with the herniated disc, diminished grip ability, sensory and reflex abnormalities, and continued back limitations following lumbar fusion.

ALJs do not have to "discuss every piece of evidence in the record"; rather, they are "prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (citing *Terry*, 580 F.3d at 475). In this case, the ALJ's discussion of Dr. Rahmany's findings dealt at some length with contrary evidence provided by Drs. Luken and Luebbe. The records cited by Plaintiff include similar limitations to those the ALJ discussed, and not mentioning those records was therefore not an error. *Id.*

### 4. Dr. Luken's Treatment Records

Plaintiff contends that the ALJ selectively discussed the records of Dr. Luken. Specifically, he contends that the ALJ should have noted, in discussing Dr. Luken's September 2010 recommendation that Plaintiff return to sedentary work, that Dr. Luken provided that Plaintiff should be permitted to sit or stand as needed and would only be able to work when not in therapy. He also argues that the ALJ should have discussed Dr. Luken's numerous recommendations, issued both before and after the September 2010 recommendation, that Plaintiff stay off work.

To begin with, Plaintiff's objection about the sit/stand part of Dr. Luken's opinion is moot for the reasons discussed above. The remaining objections all raise the same issue: whether the ALJ gave sufficient consideration to contrary evidence. Plaintiff is correct that the ALJ's account of Dr. Luken's treatment notes downplays the numerous portions that support Plaintiff's claim. But the question before the Court on this point is not whether the ALJ's decision is air-tight, but whether the ALJ satisfied a minimal level of articulation. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783,

787 (7th Cir. 2003) ("[E]ven a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). Thus, as just discussed, an ALJ is "prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones*, 623 F.3d at 1162 (7th Cir. 2010) (citing *Terry*, 580 F.3d at 475)).

Here, the ALJ discussed Dr. Luken's March 2011 opinion that Plaintiff was disabled under Listing 1.04, ultimately deciding to give that opinion only some weight. Plaintiff objects that this decision improperly relied on the findings of Dr. Rahmany, but, as discussed, the ALJ did not err in accepting those findings. Dr. Luken's conclusions in his listing-level opinion are much stronger than the tentative positions voiced in the treatment notes. Yet, while the ALJ's decision thus passes muster, the Court notes that the analysis does present a somewhat skewed account of the evidence from Dr. Luken. Thus, though the Court finds no error, it recommends that the ALJ provide a fuller account on remand of the treatment records from Dr. Luken.

### 5. Ability to Stoop

Plaintiff contends that the ALJ did not provide a basis for finding that Plaintiff could stoop notwithstanding his lumbar fusion, ongoing back pain, and difficulty bending. Not so. The ALJ discredited Plaintiff's subjective complaints insofar as they suggested that he could not stoop. (Plaintiff does not challenge the credibility determination.) And he specifically noted that Dr. Rahmany found that Plaintiff could stoop and squat without difficulty. As discussed above, the ALJ did not err in crediting Dr. Rahmany's opinion.

Thus, the ALJ's line of reasoning is readily traceable and satisfies the minimal level of articulation required in this circuit. *See Brindisi*, 315 F.3d at 787. A more detailed analysis might

be beneficial on remand, but the Court finds no legal error in the ALJ's discussion.

Finally—insofar as Plaintiff might be read as contending, that, in addition to the specific arguments just discussed, the ALJ's RFC analysis was otherwise unsupported—this argument is completely undeveloped. These suggestions, peppered throughout Plaintiff's briefing, are best understood as rhetorical devices employed by Plaintiff to suggest that he could raise even more objections. He didn't, and the Court declines to go hunting on its own for further errors.

## B. Step Three

As mentioned above, the Step Three analysis requires the ALJ to determine whether the claimant meets one of the listed impairments provided in an appendix to the Agency's regulations. Here, the ALJ's listing analysis found that Plaintiff did not meet any listing requirements. Specifically, he considered the requirements of Listing 1.04 (disorders of the spine), explaining that there was "no evidence that any of the criteria [had been] satisfied." (AR 30).[1]

This conclusion misstates the record. As discussed above, Dr. Luken's March 2011 opinion concluded that Plaintiff *did* meet all of the elements of Listing 1.04A. However, the ALJ did discuss Dr. Luken's opinion in crafting the RFC. An ALJ's opinion must be read as a whole, and failure discuss this evidence at Step Three isn't, by itself, reversible error. *See Curvin v. Colvin*, No. 13

---

[1] Listing 1.04 provides, in relevant part, as follows:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the caudal equina) or the spinal cord. With:

    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A.

3622, 2015 WL 542847, at *3 (7th Cir. Feb. 11, 2015). The ALJ's conclusion that there was no

evidence that the listing criteria had been met, though manifestly incorrect, may perhaps have been

harmless error in light of this. There is no need to decide this issue, however, because this case is

being remanded on other grounds. On remand, the ALJ's listing analysis should include a well-

developed discussion of Dr. Luken's opinion. The discussion should also include an analysis of

listing equivalence, if appropriate. *See* 20 C.F.R 404.1526.

### D. Step Five

Plaintiff contends that the ALJ failed to properly resolve an obvious conflict between the

VE's testimony and the *Dictionary of Occupational Titles* (*DOT*) as required by SSR 00-4p. As

mentioned above, the ALJ bears the burden at Step Five of showing that the claimant can perform

other work given his RFC, age, education, and experience. This burden is typically met, in part, by

asking a variety of hypothetical questions to a VE at the hearing. Such was the case here.

According to the Agency's regulations, an important part of this process is the *DOT*, an aging

list of various occupations and the ostensible capabilities required to perform them. The *DOT* forms

the backbone of the jobs inquiry. It is not controlling, however, and the Agency's regulations allow

ALJs to deviate from its definitions under certain circumstances—this is one of the reasons why it

hires VEs to testify at its hearings.

At issue here is SSR 00-4p, which "requires an ALJ who takes testimony from a vocational

expert about the requirements of a particular job to determine whether that testimony is consistent

with the Dictionary of Occupational Titles." *Prochaska*, 454 F.3d at 735. The ALJ must ask the VE

if there is a conflict. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). And if there is an apparent

conflict, the ALJ must then "elicit a reasonable explanation for the conflict before relying on the VE

. . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2–*3. The ALJ must also explain in his decision how he resolved the conflict. *Id.* at *3.

There is no question that the VE's testimony differed from the *DOT* at certain points. Thus, in response to the ALJ's hypothetical question about a person who, among other limitations, could do no more than light work, the VE listed the jobs of production assembler, small parts assembler, and electronics worker. The ALJ asked in a follow up question what jobs would be available if the hypothetical person was limited to sedentary work. The VE responded that the same three jobs would be available, though in smaller numbers. He acknowledged that his testimony differed from the *DOT*, which listed those jobs as light rather than sedentary work. The VE explained that this conclusion was based on his previous experience of "placing individuals in these jobs, observing these jobs, and analyzing these jobs." (AR 92).

Likewise, when the ALJ asked the VE what jobs would be available if the hypothetical person needed to stand for fifteen minutes after sitting for an hour, the VE gave the same three jobs, explaining that, because some workplaces bolted the chairs to the floor, there would be a twenty-five percent reduction in the number of jobs available. He again stated that this conclusion was based on his own experience, explaining that the *DOT* didn't address a sit/stand option.

Plaintiff did not raise any objections to the VE's testimony at the hearing. And the ALJ accepted it, explaining that "[w]here the information was different or went beyond the scope of the *DOT*, the vocational expert testified that the information was based of his thirty years of experience (Social Security Ruling 00-4p)." (AR 40).

Plaintiff argues that resolving the conflict by relying on the VE's experience, without more,

fell short of the requirements SSR 00-4p.[2] Though the briefing elides them, this objection raises two distinct questions under that Ruling. First, did the ALJ "elicit a reasonable explanation for the conflict"? SSR 00-4p at *2. And second, if so, did the ALJ's decision provide an adequate explanation of how he resolved the conflict? *Id.* at *4. The Court considers each in turn.

### 1. Failure to Elicit a Reasonable Explanation

Under SSR 00-4p, "the ALJ's affirmative duty extends beyond merely asking the VE whether his testimony is consistent with the DOT; the ALJ also must 'elicit a reasonable explanation for any discrepancy.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska*, 453 F.3d at 735). Thus, even though the Plaintiff did not object at the hearing, the Court nevertheless must consider whether the ALJ satisfied this requirement.

Plaintiff contends that mere citation to experience is not enough. To support this, he looks to a pair of cases from the Northern District of Illinois. *See Lacy v. Astrue*, No. 11 C 1556, 2012 WL 4759231, at *15 (N.D. Ill. Oct. 4, 2012); *Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *17 (N.D. Ill. Sept. 1, 2010). Both cases say things that appear to support Plaintiff's position. Thus, in *Smith*, the court explained that "[i]f a vocational expert could justify his testimony merely by referring to personal experience, it is difficult to understand how such testimony could ever be meaningfully challenged." *Smith*, 2010 WL 3526655, at *17. Likewise, the *Lacy* court found "that the ALJ erred by failing to elicit more detailed information about the VE's experience to enable [the court to] determine whether the VE's reductions are a reliable foundation for the ALJ's

---

[2] The Commissioner interprets Plaintiff differently, contending that he is arguing that the ALJ failed to identify an apparent conflict. Social Security Ruling 00-4p requires the ALJ to resolve not only those conflicts identified at the hearing, but also those that, though not raised by the VE or the claimant, are apparent. *See Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). But Plaintiff's contention is not that the ALJ failed to *identify* a conflict, but that the ALJ failed to properly *resolve* an obvious conflict acknowledged by both the VE and the ALJ.

determination that Ms. Lacy is not disabled." *Lacy*, 2012 WL 4759231, at *14.

But as the Commissioner points out, in both *Smith* and *Lacy*, the plaintiff's attorney challenged the VE's conclusions at the hearing. Here, however, Plaintiff's attorney made no such objection. Explaining why this difference matters requires a brief detour into the development of the Seventh Circuit Court of Appeals' Step Five jurisprudence.

More than a decade ago, the court in *Donahue v. Barnhart* held that the VE is "free to give a bottom line, provided that the underlying data and reasoning are available on demand." 279 F.3d 441, 446 (7th Cir. 2002). Thus, the Court explained, "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [*DOT*]." *Id.* However, "[i]f the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry (similar though not necessarily identical to that of [Federal Rule of Evidence] 702) to find out whether the purported expert's conclusions are reliable." *Id.* The *Donahue* court went on to explain that SSR 00-4p, which was promulgated after the hearing in that case and was thus not directly applicable to it, required much the same, noting that the ALJ was required to explain how any conflict that had been identified was resolved. *Id.*

The Court revisited this last issue a few years later in *Prochaska*, 454 F.3d at 735. That decision rejected *Donahue*'s conclusion that SSR 00-4p put the burden on the claimant to raise objections at the hearing. *Id.* Instead, the court noted that the text of SSR 00-4p explicitly puts the burden on the ALJ to ask the VE how his testimony corresponds with the *DOT* and to elicit a reasonable explanation for any discrepancy. *Id.*; *see also Overman v*, 546 F.3d at 465 (7th Cir. 2008). Nevertheless, *Donahue* remains good law insofar as it doesn't supplant a correct reading of

SSR 00-4p. As *Prochaska* explained, *Donahue*'s discussion of SSR 00-4p was dicta since it wasn't promulgated until after the administrative hearing in that case. *Prochaska*, 454 F.3d at 735.

There are therefore two separate sources of law at play regarding what qualifies as adequate VE testimony. The first is SSR 00-4p, which applies only to the ALJ's treatment of conflicts between the VE's testimony and the *DOT*. The second is *Donahue*, which allows the ALJ to rely on the VE's bottom line in all areas not covered by SSR 00-4p. However, if the VE's testimony (whether about conflicts with the *DOT* or something else) is challenged at the hearing, *Donahue* requires that the ALJ perform an inquiry similar to that prescribed in Federal Rule of Evidence 702.

The cases Plaintiff cites are thus distinguishable for they both dealt with the *Donahue* standard, not the requirements of SSR 00-4p. *See Smith*, 2010 WL 3526655, at *17 (discussing and applying *Donahue*); *Lacy*, 2012 WL 4759231, at *14 (discussing and applying *Smith*). Plaintiff seems to acknowledge as much since his reply makes no mention of either case.

This notwithstanding, the Court must still determine whether the ALJ "elicit[ed] a reasonable explanation" under SSR 00-4p. Satisfying this threshold requires less than the searching inquiry mandated under *Donahue* when a VE's testimony is challenged. Social Security Ruling 00-4p provides that:

> Reasonable explanations for such conflicts . . . include, but are not limited to the following:
>
>> Evidence from VEs . . . can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable

> publications, information obtained directly from employers,
> or from a VE's . . . experience in job placement or career
> counseling . . . .

SSR 00-4p at *2–*3. This is an awkwardly drafted explanation. The first sentence leads one to expect a list of what kind of explanations are sufficient, but the paragraph that follows instead gives a narrative discussion about the *DOT*'s definitions and how VE testimony can be useful in clarifying them. This disconnect notwithstanding, however, the passage indicates that, contrary to Plaintiff's contentions, a VE's testimony about his own experience in job placement or career counseling can count as a "reasonable explanation." Indeed, SSR 00-4p says nothing about what sort of data should be derived from these sources nor does it specify a level of articulation that the VE must meet.

Thus, in *Holtz v. Astrue*, the district court explained that the VE had testified "that she was aware from working with clients and contacting employers that [certain] jobs existed," providing two such jobs. No. 07C314C, 2007 WL 5323758, at *5 (W.D. Wis. Nov. 8, 2007). "This testimony," the district court concluded, "combined with [the VE's] qualifications and [twenty years of] experience, provided a reasonable basis for the administrative law judge to rely on it over the *Dictionary*." *Id.*; *Eaglebarger v. Astrue*, No. 111CV38, 2012 WL 602022, at *7 (N.D. Ind. Feb. 23, 2012).

Here, as in *Holtz,* the VE went beyond simply saying that his conclusions were based on his experience. He gave examples: testifying that his previous experience included placing individuals in the jobs he mentioned, observing these jobs, and analyzing these jobs. He also explained that his conclusion that the sit/stand option would reduce the number of jobs by twenty-five percent was based on his knowledge that some employers bolted their chairs to the floor at the workstation. His testimony tracks closely with the language of SSR 00-4p and satisfies its "reasonable explanation"

requirement.

To the extent that *Donahue*'s reasoning suggests that SSR 00-4p requires a Rule 702-esque inquiry regardless of whether the Plaintiff questions the basis of the VE's testimony at the hearing, that indication follows from dicta and is moreover not supported by the text of the Ruling. *See Prochaska*, 454 F.3d at 735. The *Holtz* court considered both standards, and its reasoning illustrates the difference. Immediately after ruling that the VE's testimony satisfied SSR 00-4p, the court considered an argument brought under the *Donahue* standard, concluding that remand was required because, after being asked by the plaintiff's attorney on cross examination about her job numbers, the VE was unable to provide any market surveys or even explain how she had informally extrapolated her estimates from the job data she had considered—in short, she didn't point to anything more concrete than her own experience. *Holtz*, 2007 WL 5323758, at *5 (W.D. Wis. Nov. 8, 2007) (citing *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004)); *accord. Powell v. Colvin*, No. 1:13CV51, 2014 WL 1643313, at *14 (N.D. Ind. Apr. 22, 2014).

The Court notes, however, that between the VE's sparse testimony and the outdated *DOT*, there isn't much to go on in evaluating whether the Step Five analysis is supported by substantial evidence. The Seventh Circuit Court of Appeals has recently questioned the appropriateness of relying on "a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published," and is based on information from thirty-seven years ago. *Browning v. Colvin*, No. 13-3836, – F.3d –, 2014 WL 4370648, at *6 (7th Cir. Sept. 4, 2014). "No doubt many of the jobs have changed and some have disappeared. We have no idea how vocational experts and administrative law judges deal with this problem." *Id.* This dilemma is compounded by the lack of information about the source and accuracy of the VE's job numbers. *Id.* There is no doubt that this

way of doing things undermines the ability of courts to engage in meaningful review. Nevertheless, claimants are able to trigger a more searching standard simply by asking the VE for the data supporting his bottom-line conclusions. *See Donahue*, 279 F.3d at 446.

### 2. The ALJ's Resolution of the Conflict

The ALJ adopted the VE's testimony, explaining that, where it was different or went beyond the *DOT*, the VE based his conclusions on his thirty years of experience. Plaintiff objects that this falls short of the explanation requirement of SSR 00-4p.

While the ALJ's explanation is brief, it nevertheless passes muster. *See Eaglebarger*, 2012 WL 602022, at *7 (ruling that the ALJ's explanation that she found the VE's testimony reasonable and based on experience satisfied SSR 00-4p); *Auer v. Astrue*, No. 3:09CV340CAN, 2010 WL 2813808, at *11 (N.D. Ind. July 15, 2010) ("[T]he ALJ sufficiently articulated the reason for this discrepancy, noting that the VE spoke through her own knowledge, experience and professional research."). This approach is consistent with the text of the Ruling. If a VE's testimony about his own experience can count as a "reasonable explanation" under SSR 00-4p, then the ALJ must likewise be able to rely on that experience in explaining *his* decision. SSR 00-4p at *2, *4. The ALJ thus satisfied the requirements of SSR 00-4p, having both elicited a reasonable explanation from the VE about those points where the VE's testimony differed from the *DOT* and provided an adequate articulation of how he resolved that conflict.

### 3. The VE's Job Numbers

Plaintiff also contends that the VE's testimony is further undermined by an internal inconsistency. He points out that the VE testified that there would be a twenty-five percent reduction in the number of jobs to accommodate a sit/stand option. The VE then stated that there would be

1,500 small parts assembler jobs with a sit/stand option, which was an increase, rather than a reduction, from the original number of 1,000 sedentary small parts assembly jobs. An ALJ's reliance on imperfect VE testimony does not warrant remand if, as here, a claimant does not question the basis for the testimony at the time of the hearing. *Overman*, 546 F.3d at 455–56 (7th Cir. 2008) (citing *Donahue*, 279 F.3d at 446–47 (7th Cir. 2002); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)); *cf. Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) ("The VE testified that based on his experience, 2000 assembly jobs allowed a sit/stand at-will option. Zblewski did not challenge that assertion at his hearing, and an ALJ is entitled to rely on unchallenged VE testimony."). And, at any rate, the error only applied to one of the three jobs listed by the VE. The ALJ's Step Five analysis thus does not require remand.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 12], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 24th day of February, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record